IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 5, 2003

## STATE OF TENNESSEE v. TITUS CHAMPION

**Direct Appeal from the Circuit Court for Gibson County**
**No. 7136     Clayburn Peeples, Judge**

_____

**No. W2002-02829-CCA-R3-CD  - Filed December 15, 2003**

_____

The appellant, Titus Champion, was convicted of robbery pursuant to a bench trial in the Gibson County Circuit Court. The trial court sentenced the appellant as a Range II multiple offender to six years incarceration in the Tennessee Department of Correction. On appeal, the appellant contends that the State did not prove the element of violence as was alleged in the indictment charging the appellant with robbery. Finding the appellant's argument to have merit, we modify his conviction for robbery to a conviction for theft under $500 and remand to the trial court for sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Modified and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Periann S. Houghton, Trenton, Tennessee, for the appellant, Titus Champion.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; Garry Brown, District Attorney General; and Edward L. Hardister, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On January 28, 2002, the Gibson County Grand Jury returned an indictment charging the appellant with robbery by "unlawfully, knowingly and by violence" obtaining cash from the victim, Donna Kerns. A bench trial on this charge was held in the Gibson County Circuit Court on June 24, 2002.

At trial, Donna Kerns testified that on the day of the offense she was working as a Special Agent for the 30th Judicial District Drug Task Force. At approximately 5:30 p.m. on October 30,

2001, Kerns, who was working undercover, accompanied a female confidential informant "to the area of Front and Vine" in order to purchase crack cocaine. Kerns drove to the area which was known for drug activity. Immediately upon arrival, the two women were "waved over" by several people. An individual approached the front passenger side window of the vehicle and began conversing with the confidential informant. Meanwhile, the appellant approached the driver's window and engaged Kerns in conversation.

The appellant showed Kerns a small amount of "whitish rock" that, due to her experience as a police officer, Kerns believed to be crack cocaine. Kerns held $200 in one hand and informed the appellant that she wanted to purchase $100 worth of crack cocaine. The appellant again displayed the crack cocaine. Kerns advised the appellant that she would not pay $100 for the small amount of crack cocaine the appellant possessed. However, Kerns offered the appellant $50 for the crack cocaine.

Kerns testified that the appellant "was very interested in the money" that she held in her hand. Therefore, when Kerns began counting the cash for the purchase of the crack cocaine, she moved toward the center of the car to avoid the appellant's reach. The appellant repeatedly attempted to grab the cash in Kerns' hand. Kerns informed the appellant that he would have to wait until she counted the correct amount of cash.

Kerns stated that the appellant then "reached in and – with one hand and grabbed my hand and took the money with the other hand and ran." Kerns elaborated, explaining that "I took out two twenties and a ten with this hand and I put the other money – just because – he was awfully antsy, if you know what I mean, and I tucked it under my leg like and then before I could even turn back around . . . he reached in and snatched the money and took off." The appellant did not give Kerns any crack cocaine in exchange for the money. Kerns did not pursue the appellant because she believed that to do so would be a "bad idea."

The appellant testified in his own behalf. He related his own version of events as follows:

> Well, it was one fellow, he was over there serving them some crack cocaine and while she was serving, I went to the driver's side and I looked in there and while they was making their exchange she – I don't know what it was. She got the plastic and she did it like this here. . . . I guess she was throwing it out the window and I grabbed, but wasn't nothing in it and then she was telling the other lady that I had done ripped her off, so I just walked off away from the car and then that was that on that.

The appellant maintained that he did not take any money from Kerns, nor did he ever grab her hand.

At the conclusion of the bench trial, the trial court summarily stated, "It's a robbery in the technical sense. I believe it is and I do find you guilty . . . of simple robbery." At the sentencing

hearing, the trial court sentenced the appellant to six years incarceration. The appellant timely appealed his robbery conviction, arguing that the proof was insufficient to prove robbery by violence as was alleged in the indictment.

## II. Analysis

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 39-13-401(a) (1997) (emphasis added) defines robbery as "the intentional or knowing theft of property from the person of another by violence *or* putting the person in fear." "A person commits theft of property if, with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1997).

As we noted earlier, the appellant was charged with robbery by "unlawfully, knowingly and by violence" taking cash from Kerns. In State v. Fitz, 19 S.W.3d 213, 216 (Tenn. 2000), our supreme court examined what evidence constituted proof of "violence." The court concluded that the plain meaning of the element of violence as used in the offense of robbery pursuant to Tennessee Code Annotated section 39-13-401 is "physical force unlawfully exercised so as to damage, injure or abuse." Id. at 217; see also State v. Allen, 69 S.W.3d 181, 186 (Tenn. 2002). The court explained that "violence and force are obviously related but not synonymous–in effect, violence is a more severe degree of force. Stated another way, a violent act necessarily involves force but a forcible act does not necessarily involve violence." Fitz at 216. For example, the "theft of a wallet from the pocket or purse of an unknowing or unresisting victim, for example, may require 'compulsion by the use of physical power' but not violence." Id. at 217 (citing Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 8.11(d), at 781 (2d ed.1986)).

Applying the reasoning of Fitz, we can discern no evidence of violence in the appellant's actions. Kerns stated that the appellant "grabbed" her hand and took her money. While the appellant's actions involved force, we do not conclude that the actions constituted a violent act.

Therefore, we conclude that the appellant correctly argued that the State failed to prove that he utilized "violence" in committing the theft of Kerns property.[1]

Nevertheless, we also conclude that the State amply proved the elements of theft under $500, a Class A misdemeanor. <u>See</u> Tenn. Code Ann. § 39-14-103. As we earlier noted, an offender "commits theft of property if, with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." <u>Id.</u> Kerns' testimony clearly established that the appellant committed the offense of theft and that the amount of property taken was $50.

### III. Conclusion

Accordingly, we modify the appellant's conviction of robbery to a conviction of theft under $500 and remand to the trial court for sentencing on that offense.

_____
NORMA McGEE OGLE, JUDGE

---

[1] We note that the State arguably proved that the appellant committed robbery by placing Kerns *in fear*. <u>See</u> Tenn. Code Ann. § 39-14-103. However, the indictment charging the appellant with robbery solely alleged that the appellant committed robbery *by violence*.