**STATE of Tennessee, Appellee,**

v.

**Johnny Lacurtis PHILLIPS, Appellant.**

Supreme Court of Tennessee,
at Jackson.

June 10, 1996.

---

Johnny Lacurtis Phillips, Tiptonville, Pro Se.

Charles W. Burson, Attorney General and Reporter, Michael E. Moore, Solicitor General, Linda A. Ross, Associate Solicitor General, Nashville, for Appellee.

## OPINION

BIRCH, Justice.

In this cause, we granted review in order to determine whether the imposition of three convictions for sexual conduct occurring during a "single" criminal episode violates constitutional provisions against double jeopardy. After carefully examining the facts and thoroughly considering applicable law, we conclude that the record before us supports the imposition of three convictions and that double jeopardy provisions are not implicated here. Accordingly, the judgment of the Court of Criminal Appeals upholding the convictions is affirmed.

### I

A Lauderdale County jury convicted Johnny Lacurtis Phillips, the appellant, of aggravated burglary and of three counts of aggravated rape. The trial judge sentenced him, as a Range I, standard offender, to three concurrent twenty-two-year sentences for the aggravated rape convictions and a four-year sentence for the burglary conviction to be served consecutively to the rape sentences.

The record reveals that on the evening of October 31, 1991, the victim, a thirty-year-old female, was in her apartment when she was awakened by a noise in her son's bedroom. Realizing that her son was not home, she investigated and confronted a male she later positively identified as Phillips. He was armed with a knife, and the victim attempted to escape. He caught and subdued her. In the struggle, however, she sustained a knife wound to her hand.

Phillips forced the victim into her bedroom. He dropped the knife, but he immediately produced another and told her to "shut up" or he would kill her. He forced her to remove her slacks, cut her brassiere from her body, and bound her to the bed with some type of elastic material.

Phillips inserted a plastic object into the victim's vagina, but he withdrew it when she complained of pain. He then performed cunnilingus. Next, he penetrated her vaginally with his penis. He repeated each of the two latter acts. The episode lasted approximately three hours. As he was leaving, Phillips asked the victim which brand of perfume she preferred. Even though she did not respond, Phillips stated, "I'm going to leave you some in the mailbox, and if there's any time you want me to do this again, let me know and I'll be back."

The victim reported the incident to the police. The investigator showed her several photographs, but she was unable to locate the defendant's photograph among them. The following day, as the victim and her mother were enroute to a meeting with the investigators, the victim espied Phillips. She immediately notified investigators, who happened to be nearby. They arrested Phillips.

Upon his arrest, Phillips was searched. Among the items seized from his person were two knives, a plastic object, an unmatched pair of gloves, a pink brassiere, a black brassiere that appeared to have been cut, and a pair of pink underpants. The victim identified the knives and the gloves as

being similar to those Phillips had possessed during the incident. She identified the plastic object as the one Phillips had used to penetrate her. Additionally, she identified all of the female undergarments seized from Phillips as her own. Of interest also is that the victim found cologne in her mailbox the day following the incident.

## II

▉ Phillips insists that his conduct during the episode constituted but a single offense, though variously committed. This insistence implicates general double jeopardy considerations and requires analysis in that context.

In *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), the United States Supreme Court defined the double jeopardy clause of the Fifth Amendment as affording a defendant three basic protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. Although the issue here could conceivably implicate each of the above protections, we are chiefly concerned with the third.

The indictment charges three counts of penetration,[1] and the proof shows that each penetration was committed differently. First, Phillips inserted a plastic object into the victim's vagina. Next, he performed cunnilingus. Penetration of the vagina by penis followed.

Preliminarily, we note that "although separate acts of intercourse may be so related as to constitute one criminal offense, generally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." [2] Moreover, each of the above-described acts is separately defined in Tenn. Code Ann. § 39–13–501(7) as a discrete type of sexual penetration subsumed by Tenn.

---

1. "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the de-

fendant's, or any other person's body, but emission of semen is not required. Tenn.Code Ann. § 39–13–501(7) (1991).

2. 75 C.J.S. *Rape* § 4 (1952 & Supp.1995).

Code Ann. § 39–13–502, the aggravated rape statute.[3] Each act, in our opinion, is capable of producing its own attendant fear, humiliation, pain, and damage to the victim. Each type of penetration requires a purposeful act on the part of the perpetrator.

In this context, the issue is one of multiplicity. Multiplicity concerns the division of conduct into discrete offenses, creating several offenses out of a single offense.[4] Several general principles determine whether offenses are "stacked" so as to be multiplicitous:

1. A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;[5]

2. If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous;[6] and

3. Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.[7]

The evidence in the record before us clearly establishes that the appellant performed three separate acts of sexual penetration. Hence, the question is whether these acts, accomplished within a three-hour period, constitute one offense of aggravated rape or three. As the Court of Criminal Appeals correctly observed in *State v. Burgin*, 668 S.W.2d 668, 670 (Tenn.Crim.App.), *perm. app. denied*, (Tenn.1984), "an accused may be convicted of more than one offense when the rape involves separate acts" of sexual penetration. *See also State v. Pea-cock*, 638 S.W.2d 837 (Tenn.Crim.App.), *perm. app. denied*, (Tenn.1982).

From a consideration of the facts in the record before us, it is not difficult to conclude that the appellant, indeed, committed three offenses. Without being graphic, each of the above-described sexual acts required a different body position and engaged different body parts. Moreover, the record contains no proof of the duration of each sexual act; however, the proof does show that the entire episode consumed approximately three hours. Acknowledging natural limitations on human sexual endurance, we would be hard-pressed to characterize the appellant's conduct as a "single continuous event." Therefore, each penetration constituted a distinct, unlawful invasion of the victim's body.

### III

Should similar questions arise in the future, we suggest that the following factors may be significant:

1. The nature of the act;

2. The area of the victim's body invaded by the sexually assaultive behavior;

3. The time elapsed between the discrete conduct;

4. The accused's intent, in the sense that the lapse of time may indicate a newly formed intent to again seek sexual gratification or inflict abuse; and

5. The cumulative punishment.

We observe that the presence and absence of any one factor or a combination of them other than the nature of the act is not determinative of the issue.

Although we can imagine complex cases in which the facts and circumstances will not permit easy resolution, we do not have such a

---

3. Tenn.Code Ann. § 39–13–502(a)(1) defines aggravated rape as the "unlawful sexual penetration of a victim by the defendant or the defendant by a victim" where "[f]orce or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon."

4. *See* 9 David L. Raybin, *Tennessee Practice: Criminal Practice and Procedure* § 16.20 (1984 & Supp.1995).

5. *State v. Black*, 524 S.W.2d 913, 916–20 (Tenn. 1975); *see also State v. Conley*, 639 S.W.2d 435, 436 (Tenn.1982).

6. *Black*, 524 S.W.2d at 920 (recognizing and applying the "identity of offenses" test of *Blockburger v. United States*, 284 U.S. 299, 302–04, 52 S.Ct. 180, 181–82, 76 L.Ed. 306 (1932)).

7. *Lillard v. State*, 528 S.W.2d 207, 211 (Tenn. Crim.App.1975).

case before us. Thus, we are not in the least hesitant in concluding that the appellant committed the three offenses of aggravated rape as charged. Punishment may, therefore, be imposed for each offense without implicating constitutional double jeopardy provisions.

In this case, the trial judge sentenced the appellant to twenty-two years imprisonment on each of the three aggravated rape convictions and ordered that the sentences be served concurrently. We agree with the concurrent sentencing. Moreover, imposition of the concurrent sentences makes it unnecessary for us to address the issue of whether the legislature intended cumulative punishment. *See State v. Blackburn*, 694 S.W.2d 934 (Tenn.1985).

ANDERSON, C.J., and DROWOTA and REID, JJ., concur.

WHITE, J., not participating.